Ruth Landis, Widow of John Landis, Petitioner v. Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Fowler & Williams, Respondents.

Argued December 8, 1977, before Judges WILKIN-SON, JR., ROGERS and DiSALLE, sitting as a panel of three.

*Thomas B. Rutter,* with him *Lawrence M. Silverman,* for petitioner.

*Lawrence L. Robinson,* with him *Joseph R. Thompson,* and *James N. Diefenderfer,* for respondents.

OPINION BY JUDGE ROGERS, March 14, 1978:

Ruth Landis, the appellant in this workmen's compensation case, filed a Fatal Claim Petition seeking

compensation and other benefits of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq., to which she believed she was entitled by reason of the illness and death of her husband, John Landis. Mr. Landis died on November 24, 1972, the result, the appellant contends, of an accident sustained in late November 1971. As the date just recorded shows, Mrs. Landis was required to prove that her husband's death was caused by an accident. An accident occurred, she says, when Mr. Landis was subjected to unusual strain of a nature, and was required to overexert himself in a fashion, not normal to his employment. *Workmen's Compensation Appeal Board v. Olivetti Corp.*, 26 Pa. Commonwealth Ct. 464, 364 A.2d 735 (1976).

Mr. Landis was an over-the-road truck driver employed by the appellee, Fowler and Williams, in the haulage of freight between Philadelphia and other points, including Scranton.

At referees' hearings Mrs. Landis testified that her husband was a large, strong man in good health on November 24, 1971, the day before Thanksgiving. He left home on that day at about 6:00 o'clock P.M. to drive his truck to Scranton, deliver goods and return. It was expected that he would return at about 4:00 o'clock A.M. on November 25, 1971, Thanksgiving morning, to spend the holiday at home. Mr. Landis did not come home on November 25, 1971; he did not come home until 3:00 o'clock P.M. on Friday, November 26, 1971, thirty six hours later than expected. When he arrived home Mr. Landis was coughing, sneezing, short of breath and suffering chills. On Sunday, November 28, 1971, Mr. Landis was admitted to Nazareth Hospital suffering from acute pulmonary edema and the symptoms of aortic stenosis and rheumatic heart disease. From November 26, 1971 until his death on November 20, 1972, Mr. Landis was a

sick man. He was hospitalized at least five times and once underwent heart surgery. This testimony was of course admissible.

Mrs. Landis was also permitted to testify, over objection, that her husband called her by telephone during his absence from home from November 24, 1971 and until November 26, 1971 and that he talked with her when he came home. He reported that his truck had been plowed under the snow and immobilized on a hill in the Pocono mountains; that he was required several times to walk to a location down the hill to reach a telephone; that he had tried to disengage his truck by laying chains at the wheels; and that he had slept in the truck. She testified that her husband told her that he suffered shortness of breath during his trips on the hill.

One of Mr. Landis's treating physicians testified that Mr. Landis had preexisting conditions of rheumatic heart disease and aortic stenosis which were aggravated by the exertion and activities on the hill in the Poconos and that that incident was a precipitating cause of Mr. Landis's death from congestive heart failure.

Medical records were admitted into evidence; one is a letter from a consulting physician dated December 30, 1971, addressed to a treating physician which states that Mr. Landis, on his examination, had chronic rheumatic valvular heart disease and had developed acute pulmonary edema, "precipitated by upper respiratory illness having been involved in a snowstorm up in the Poconos." The records of the Nazareth Hospital to which Mr. Landis was admitted on November 28, 1971 and from which he was discharged on December 11, 1971 states the following:

The patient is a 50 years old male who developed shortness of breath for a couple of days. The patient was brought to this accident ward

in a state of consciousness, was coughing with evidence of acute pulmonary edema. The patient is stating that he was stuck in a snow storm and had to walk several miles up hill and he noticed some extreme dyspnea with cough and extreme shortness of breath. The patient has been known to have rheumatic heart disease since the age of 14.

The records of Hahnemann Medical Hospital prepared during an admission in April of 1972 reports the following:

HISTORY OF PRESENT ILLNESS: This is the first Hahnemann Hospital admission for this 50 year old white male, who had rheumatic fever at the age of 16 and has had an asymptomatic murmur ever since. In November of 1971, while climbing a mountain while driving his truck, he became extremely short of breath. Since that time, he has noticed shortness of breath even on mild to moderate exertion.

Histories recorded at other hospitals to which Mr. Landis was admitted contain similar histories.

The referee who decided the case made numerous detailed findings of fact. The crucial ones are that Mr. Landis's activities in the Poconos at Thanksgiving time in 1971 were not usual duties of his employment, that they involved unusual exertion and strain, that they aggravated his preexisting heart condition and that they were the precipitating cause of his death. The referee awarded benefits.

The Workmen's Compensation Appeal Board reversed the referee's award on the grounds: that Mrs. Landis's testimony as to what occurred to her husband while he was absent from home between November 24, 1971 and November 26, 1971 was inadmissible hearsay; and that the treating physician who testified, depended, in forming his opinion of causation, not on

histories taken by him personally from the decedent but on Mrs. Landis's testimony at earlier referees' hearings. The Appeal Board's consideration of the histories appearing in the medical records to which we have hereinbefore referred is ambiguous; but we understand it to say that since many of the referee's findings were based on Mrs. Landis's testimony which the Board held to be inadmissible, none of the findings were supported by substantial evidence.

In our opinion, the referee's award is supported without Mrs. Landis's testimony. Taking the other Appeal Board's reservation in the order just given, we note: the treating physician who testified as to cause based his opinion not only on Mrs. Landis's testimony but also on the histories in the medical records which are not only clearly admissible[1] but which were admitted into evidence without objection; and finally it does not matter that some of the details in some of the referee's findings were based on Mrs. Landis's testimony, if the crucial findings that Mr. Landis's death was precipitated by his involvement in the snowstorm in the Poconos is supported by the medical histories which are in the record.

Without Mrs. Landis's testimony the facts are that Mr. Landis, an apparently well man, went on a working trip scheduled to take about ten hours; that he arrived home two days later ill with pulmonary edema and with aortic stenosis and rheumatic heart disease; and that he told the persons involved with his treatment that the symptoms of shortness of breath, cough and extreme dyspnea began when he was stuck in a snowstorm and had to walk several miles uphill. These facts together with medical opinion that Mr. Landis's illness and death were precipitated by these events supported the finding of an accident as an oc-

---

[1] Under the exception carved out in *Cody v. SKF Industries*, 447 Pa. 558, 291 A.2d 772 (1972).

currence of unusual strain while doing tasks not normal to the worker's employment.

Finally, although Mrs. Landis's testimony is not necessary to our conclusion, we believe that her testimony of what her husband told her might be considered. Where in workmen's compensation cases "the facts are sufficiently established by circumstantial evidence, hearsay testimony, not inconsistent therewith, if relevant and material to the fact in issue . . . may be considered for the additional light, if any, that it throws on the matter." *Nesbit v. Vandervort & Curry*, 128 Pa. Superior Ct. 58, 62, 193 A. 393 (1937).

Accordingly, we enter the following

ORDER

AND Now, this 14th day of March, 1978, the Order of the Workmen's Compensation Appeal Board dated November 18, 1976 is hereby reversed. Judgment shall be entered for the claimant as follows:

The Defendant is hereby ORDERED to pay the Decedent's Widow Death Benefits in the sum of $39.00 per week from November 20, 1972 indefinitely into the future for the duration of her widowhood. Claimant is entitled to reimbursement for Funeral Expenses in the amount of $750.00. The Defendant is also ORDERED to pay the following Medical Expenses:

HOSPITALS

| | | |
|---|---|---|
| Nazareth Hospital | 11-28-71 to 12-11-71 | $ 1,116.70 |
| Hahnemann Hospital | 2-5-72 to 2-15-72 | 949.60 |
| Hahnemann Hospital | 3-13-72 to 4-20-72 | 7,177.10 |
| Hahnemann Hospital | 10-30-72 | 95.30 |
| Friends Hospital | 11-14-72 to 11-20-72 | 1,579.67 |
| J.F.K. Hospital | 11-20-72 to 11-22-72 | 783.30 |
| | TOTAL | $11,701.67 |

PHYSICIANS

| | | |
|---|---|---:|
| 2601 Medical Group | $ | 6.00 |
| Dr. Bernard Segal | | 1,535.00 |
| Hahnemann Medical Associates | | 400.00 |
| Hahnemann Anesthesia Service | | 491.00 |
| Dr. William M. Lemmon | | 1,310.00 |
| Dr. Maurice Sackey | | 210.00 |
| Dr. J. F. Selhat | | 27.00 |
| Dr. Norman D. Weiner | | 140.00 |
| Dr. Alexander Laba | | 15.00 |
| Dr. Davis Chosky | | 60.00 |
| | TOTAL | $ 4,194.00 |

MISCELLANEOUS

| | | |
|---|---|---:|
| Drugs | | 142.06 |
| Parkway Clinical Laboratories | | 60.00 |
| Industrial Medical Facility | | 34.00 |
| | TOTAL | $ 236.06 |
| | TOTAL EXPENSES | $16,131.73 |

PER CURIAM ORDER

AND Now, this 12th day of April, 1978, being satisfied by a reexamination of the record that the issue advanced as a reason for reargument—the propriety of an award of a workman's medical expenses to his widow in a proceeding on her claim for widow's benefits—was not raised before the referee, indeed, that the bills for the decedent's medical treatment went into the record without objection, we are constrained to, and do, refuse Fowler and Williams' application for reargument and deny the prayer of their petition for supersedeas.